**Larry B. SUMMERS et ux., Appellants,**

**v.**

**BRANSFORD–HINDS BUILDING COMPANY, Appellee.**

No. 3935.

Court of Civil Appeals of Texas.

Eastland.

Oct. 16, 1964.

Rehearing Denied Nov. 13, 1964.

David L. Hooper and William S. Perry, Schulz & Hanna, Abilene, for appellants.

Bradbury, Tippen, Brown & Clement and Bryan Bradbury, Abilene, for appellee.

WALTER, Justice.

Doctor Larry B. Summers and wife filed suit against Bransford-Hinds Building Company for breach of an implied warranty to construct a house in a good and workmanlike manner. The defendant's motion for summary judgment was sustained. The judgment recites: " * * * the Court finds that if the plaintiffs ever had any cause of action that it is barred by the two-year Statute of Limitation * * * ". The plaintiffs have appealed.

Appellants contend the court erred in granting the motion because there was a

genuine issue of fact as to when the statute of limitation commenced to run.

In support of its motion for summary judgment Bransford relied upon the pleadings, the contract of sale, a letter from appellants to the appellee dated April 15, 1961, and the deposition of the plaintiffs. The appellants filed a verified motion in opposition to appellee's motion for summary judgment and relied upon the pleadings and the deposition of plaintiffs.

All parties agree that the correct rule for determining when limitation commences to run for a breach of implied warranty is correctly set out in Puretex Lemon Juice, Inc. v. S. Riekes & Sons of Dallas, Inc., 351 S.W.2d 119 (Writ Ref. N.R.E.), wherein the court announced the rule as follows:

> "It is our opinion, therefore, that the rule in Texas is that limitation commences on a breach of implied warranty when the buyer discovers or should discover the injury. We are convinced that the rule is followed in analogous situations and is supported by the better reasons."

The record reveals that the contract of sale was executed on November 3, 1960; that the deed from Bransford to Summers is dated December 27, 1960; that Doctor Summers and his wife moved in the house sometime after Christmas in 1960; that suit was filed on June 12, 1963.

Doctor Summers testified by deposition substantially as follows: I executed a contract with Bransford-Hinds Building Company on November 3, 1960 to purchase a house and premises located at 1614 Minter Lane in Abilene, Texas; the purchase price was $26,500.00. On April 15, 1961, I wrote a letter to Bransford setting out a list of items which we thought he was obligated to furnish under his contract. We set forth the following in the letter: "We like the house, but we do not consider it acceptable or complete until each listed item has been taken care of to our satisfaction." He was asked:

"Now, did that letter list everything that you considered to be—" and he answered "—incomplete at the time?" At the time I entered into the contract to purchase this house it was about two-thirds completed. He was asked:

"All right. Do you recall up until the 15th of April, 1961, when you wrote this letter, was there anything the matter with the house other than what was listed in the letter?" And he answered "Of the things that I knew of, no." He was asked "What did you discover that didn't meet your satisfaction pertaining to this house after the 15th of April, 1961, that wasn't listed in the letter of that date?" And he answered "All of the cracks and so forth in the walls, and sheet rock pulling up, and the moulding pulling up, and things like that, that we became conscious of after we tried to list the place with a real estator." Speaking about cracks in the building he said: "It just all became apparent just about when the real estator came out there." I was not aware of the defects in our house until the representative from Perry, Hunter, Hall came out there to inspect the house when we listed it for sale. The real estate men came out in April or May of 1963. The following questions and answers appear in Doctor Summers' deposition:

"Q. Now, until the representative from Perry, Hunter, Hall came out there, that is when you say you were aware, then, of these situations?

"A. That's right.

"Q. And, he pointed them out to you?

"A. Yeah.

"Q. And you didn't know about them until he pointed them out?

"A. That's right."

When I moved in the house I was going to work at 7:00 o'clock in the morning and did not get home until 8:00 or 9:00 o'clock

at night and it never occurred to me that the house was falling down. I didn't notice anything that was particularly wrong with the house until the real estate men pointed it out to me. In his deposition the following question and answer is given:

"Q. And you didn't know there was any trouble until the real estate man pointed it out to you?

"A. It was not apparent. I mean, I didn't realize it was so bad that they couldn't list it as sellable property, because if the cracks had been there before, they had been so gradual that I didn't notice them, and as far as I am concerned, they weren't there."

Mrs. Summers testified by deposition substantially as follows: I wasn't in our house much of the time during the first six or eight months that we lived there. I was working some twelve to fourteen hours in the office and we were not inspecting the house. I became aware of a hairline crack across the ceiling of the master bedroom probably in the second year after we moved in. I would say it was after September 1961. Our baby was born on September 29, 1961, and I didn't stay home until that time. The items set forth in our letter to Mr. Bransford of April 15th were things that he had promised to do that had not been done. Those items were necessary for the completion of the house.

Robert J. Bransford, President of Bransford-Hinds Building Company testified that after he received Doctor Summers' letter of April 15th he called the subcontractor about the items set forth therein. He assumed that such matters were taken care of or Mrs. Summers would have called him.

In Trinity Universal Insurance Company v. Horton, Tex.Civ.App., 363 S.W.2d 376 (No Writ History), the court said:

"On the hearing of a motion for a summary judgment the court must determine whether there is any issue of fact to be tried. The court cannot weigh the evidence, determine the credibility of the witnesses and try the case on affidavits. All doubts as to the existence of a genuine issue as to a material fact must be decided against the party moving for a summary judgment. The court must accept as true all evidence of the party opposing such a motion which tends to support his contention and must give him the benefit of every reasonable inference which may be drawn therefrom. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Box v. Bates (Sup.Ct.) [162 Tex. 184], 346 S.W.2d 317."

 Bransford's position is that the evidence conclusively demonstrates that Doctor Summers' cause of action, if any he had, commenced to run more than two years before suit was filed. Summers' position is that the items set forth in the letter of April 15th were items which had not been completed under the contract. The Summers seek to recover for a breach of an implied warranty. Those items upon which they seek a recovery are not listed in the April 15th letter. They allege "—plaintiffs would show that the concrete slab foundation of such house was so poorly constructed that the walls of said house have cracked and shifted, causing the upstairs floor to pull away from the walls; the partition wall near the stairway has pulled away from the ceiling; the flooring in the main hallway has dropped away from the walls; the oak flooring in the upstairs bedroom is pulling apart and cracks are appearing therein; the other walls in the house, including the garage, have cracked and shifted and moved to the extent that such house is virtually uninhabitable. The foundation is so poorly constructed as herein alleged that the entire house seems to be cracking and falling apart." The Summers contend that limitation did not commence to run until the real estate men came out and inspected their house which they had listed for sale. They came out in April or May of 1963. If there is any evidence of probative value, with the inferences that may reasonably be drawn therefrom, which will support a finding that

limitation did not commence to run until April or May 1963, the appellants' contentions must be sustained. We must consider only the evidence which, viewed in its most favorable light, tends to support such a finding and we must disregard all evidence to the contrary.

 After considering the evidence and the rules which we are required to follow in summary judgment cases, we are compelled to hold that an issue of fact was raised by the evidence.

The judgment is reversed and the cause is remanded.