**METAL STRUCTURES CORPORATION, Appellant,**

v.

**PLAINS TEXTILES, INC., Appellee.**

**No. 8156.**

Court of Civil Appeals of Texas, Amarillo.

Aug. 2, 1971.

Rehearing Denied Aug. 30, 1971.

Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for appellant.

Crenshaw, Dupree & Milam, J. Orville Smith, Lubbock, for appellee.

REYNOLDS, Justice.

This appeal is from a judgment entered on a jury verdict awarding damages resulting from a building construction failure. The judgment of the trial court, as hereinafter reformed, is affirmed.

Plains Textiles, Inc., appellee herein, organized for the purpose of constructing and operating a textile spinning mill in Lubbock County, employed Bill G. Eppes, an architect and engineer, to design the building, and entered into a construction contract with H. C. Lewis as the general contractor. Stout Steel Builders, Inc., a franchise dealer of Metal Structures Corporation, appellant herein, contracted with H. C. Lewis to furnish and install the steel used in the building. Appellant designed, manufactured and supplied the steel used by Stout Steel Builders, Inc. No contract was entered into, or existed, between appellant and appellee. The steel was furnished and installed by early January, 1966. When the building was in the final stage of completion on April 23, 1966, following a rain the preceding day and ponding of water on the roof, one of the steel frames partially failed and a part of the roof collapsed.

On April 22, 1968, appellee Plains Textiles, Inc., filed suit against Bill G. Eppes, Stout Steel Builders, Inc., and appellant Metal Structures Corporation for damages. H. C. Lewis was not made a party to the suit. The theories of recovery alleged and submitted against the defendants were negligence and strict tort liability for breach of implied warranty. Fraudulent concealment was not pleaded. Appellant specially excepted to appellee's petition on the ground, among others, that appellee's cause of action was barred by the two-year statute of limitations. The record does not reflect that this exception was presented to or ruled on by the trial judge. Appellant pleaded among its defensive matters the defense of volenti non fit injuria and the two-year statute of limitations. Various cross claims for contribution and indemnity were filed. Trial was to a jury. At the close of the evidence, the trial court overruled appellant's motion for an instructed verdict based on the two-year statute of limitations, volenti and other allegations. Then the trial court, upon motion to which there was no objection, dismissed Stout Steel Builders, Inc.,

and its cross claim from the suit with prejudice. The jury relieved Bill G. Eppes from liability. No complaint is made to the exoneration of Stout Steel Builders, Inc., and Bill G. Eppes, and the judgment as to them has become final.

In response to the submitted special issues, the jury found that appellant breached its implied warranty to appellee and that in three particulars appellant was guilty of negligence that proximately caused appellee's damages. The jury found the defense of volenti non fit injuria. The jury findings, material to this appeal and summarized corresponding to the numbered special issues, were that: (1) the failure of the roof was proximately caused by ponding of water on the roof; (2) the ponding of water was proximately caused by excessive deflection of the frames; (3) the excessive deflection was proximately caused by a defective condition of the frames; (4) the frames were defective at the time they were delivered to be used in the building; (5) appellant designed the frames; (9) appellant supplied steel frames that were excessively flexible and not sufficiently rigid to avert ponding on the roof, (10) which was negligence, and (11) a proximate cause of the roof failure and resulting damages; (12) appellant in designing the frames failed to design them to compensate for the probable deflection, (13) which was negligence, and (14) a proximate cause of the roof failure and resulting damages; (15) the ponding of water on the roof created a dangerous condition prior to the collapse, which (16) appellee knew, and (17) appreciated, and (18) appellee voluntarily exposed its building to the risk of such dangerous condition; (50) appellant failed to follow plans and specifications in not cambering the steel frames, which (50a) was negligence, and (50b) a proximate cause of the damages; (51a) appellant, after notice, if any, of alleged defects in the steel frames, represented to Bill Eppes that such structure was sound; and (51b) Bill Eppes relied on such assurances from appellant. Special issues 52 and 53, consisting of inquiries as to appellee's specific damages, have not been challenged.

Appellant's motion for judgment based on limitations and the defense of volenti; to disregard the jury's findings to special issues nos. 1 through 4, 9 through 14, 27, 34, 35, 50, 50(a) and 50(b); and for judgment notwithstanding the verdict, was overruled. Appellee's motion to disregard the jury's answer to special issue no. 18 and for judgment was granted, and judgment was rendered by the trial court against appellant in favor of appellee for damages in the sum of $38,094.08, with interest thereon at the rate of six percent per annum from April 23, 1966. Appellant then appealed, assigning ten points of error, to which appellee has replied in seventeen counterpoints. The evidence pertinent to the assignments of error may be summarized as follows:

The structural soundness of the steel frames was first questioned by the general contractor shortly after their installation. In January, 1966 [1], and on February 5, Lewis informed Eppes that he questioned the strength of the frames, and on February 7, advised appellee by letter that he questioned the structural design of the building, and that "The structure of this building should be checked at once by a qualified engineer." Eppes was informed, and thought the problem concerned the purlins that were rolling. He approached appellant and was furnished with a plastic analysis on or about February 17, reflecting the frames had a safety factor of almost 100%; however, appellant claims the plastic analysis pertained to stress rather than to deflection. The general contractor's engineer formed an opinion that the frames were generally unstable, causing deflection that would permit roof water to pyramid and would endanger safety. He informed appellee's officers. Although assured by the architect that the building was

---

**l.** *All references to dates are for the year 1966 unless otherwise indicated.*

adequate, appellee's board chairman noticed the frames were limber and of very thin material, and appellee, feeling caught between its architect and general contractor, hired J. Weldon Hunnicutt, an engineer, to give it an independent answer. In early March, Hunnicutt inspected the building with Charles Wilson, appellee's president and general manager. Hunnicutt called Wilson's attention to the obvious deflection of the frames, wrinkling in the web plate, and ponding of water on the roof. Wilson was aware of some deflection at this time. Hunnicutt took measurements to assist him in his investigation. By letter dated March 12 addressed to appellee, Hunnicutt stated his observations could possibly indicate the framing is lighter than normally required, but this was "not to say the roof framing is unsafe as now built," and requested a complete set of structural steel shop drawings, in lieu of his making another trip to secure detailed measurements, to complete his computation. By a letter dated April 19 and received by appellee on April 21, Hunnicutt advised the need for further investigation to arrive at a final conclusion because of overstress in the frames. Before Hunnicutt completed his investigation, and arrived at a final conclusion, the injury complained of occurred. It is undisputed that appellee did not know the frames were not cambered until after April 23. The jury findings that the steel frames were defective when delivered because of excessive deflection due to lack of camber are not challenged and we find them to be supported by sufficient evidence of probative force.

Appellant's first assignment of error is that the trial court erred in failing to render judgment in its favor on its plea of the two-year statute of limitations. In this connection, appellant asserts appellee's causes of action on the alleged torts were barred as a matter of law because it is undisputed that appellee had damage and injury, of which it was aware, more than two years prior to the filing of suit; appellee answers that it did not know that the frames were defective prior to the partial collapse of the roof on April 23, and that its causes of action accrued on that date, less than two years before the filing of suit on April 22, 1968.

■ As directed to the circumstances of this case, the two-year statute of limitations, Art. 5526, Vernon's Ann.Civ.St., is applicable to the tort actions founded on negligence, Linkenhoger v. American Fidelity & Casualty Co., Inc., 152 Tex. 534, 260 S.W.2d 884 (1953) and on breach of implied warranty.[2] Smith v. Fairbanks, Morse & Co., 101 Tex. 24, 102 S.W. 908 (1907). The period of limitations on actions for negligence begins to run from the commission of the negligent act, and not from the time of the ascertainment of damages, if the negligent act constitutes the invasion of a legally protected interest of another, even in the absence of knowledge by the one who is injured, Houston Water Works Co. v. Kennedy, 70 Tex. 233, 8 S.W. 36 (1888), and even though almost all of the injured party's damages accrued more than two years after the initial wrongful invasion. Tennessee Gas Transmission Co. v. Fromme, 153 Tex. 352, 269 S.W.2d 336 (1954). The facts in the present case reveal as a matter of law that the negligent acts of appellant found by the jury constituted an invasion of appellee's right causing a legal injury when the defective frames were installed, although almost all of appellee's damages found by the jury occurred at a later date. It necessarily follows that as to the cause of action based on negligence, limitations

---

2. Appellee originally advocated applicability of the four-year statute of limitations provided in Sec. 2.725 of the Texas Uniform Commercial Code (superceded by the Texas Business and Commerce Code effective Sept. 1, 1967) to its cause of action for breach of implied warranty, but since the Uniform Commercial Code did not become effective in Texas until July 1, 1966, that position was abandoned in appellee's reply brief tendered after submission of the case.

began to run at the time of the installation of the defective frames no later than January, 1966, and appellee's cause of action based on the negligent acts of appellant was barred prior to the time suit was instituted.

The legal principle followed answers appellee's contentions that limitation is inapplicable because appellee did not know the frames were not cambered, and thus defective, until after one of the frames failed, and that the cause of action did not accrue until actual damage was suffered as a result of the wrong. Appellee suggests that the trend in Texas and elsewhere in those cases where the victim did not know he had been injured by a negligent act is against the hard and unyielding rule that a cause of action accrues when such act is committed. We are then urged to depart from "an unjust rule toward justice" and apply the statute of limitations in such a manner as to achieve a just result, as was done in Gaddis v. Smith, 417 S.W.2d 577 (Tex.1967), by application of the "discovery rule"—i. e., the statute of limitations commences when the injured party knows or should have known that an injury had been done. That the old rule we have followed here is still the law in Texas in this type of negligence action is made manifest in the *Gaddis* case. There the court reviewed the Houston Water Works Co. v. Kennedy case, supra, and did not change the general rule, and, in applying the "discovery rule" in that instance, specifically limited its application to medical malpractice actions in which a physician leaves a foreign object in the body of his patient. Whatever the equities and inequities may be, our duty is to apply the law to the facts in this case. As our Supreme Court succinctly stated in Morriss-Buick Co. v. Pondrom, 131 Tex. 98, 113 S.W.2d 889 at page 890 (1938), "(W)e are faced in this case, not with the necessity of announcing any new rule, but with the duty of following an old one." If the prevailing rule is to be abrogated, it is the exclusive prerogative of our Supreme Court to announce the modification.

Conversely, a different principle, and one advanced by appellee, is operative in an action for breach of implied warranty brought on sale of a defective product. In such action, limitation commences, not necessarily when the sale is made, but when the buyer discovers, or in the exercise of ordinary care should discover, the injury. Puretex Lemon Juice, Inc. v. S. Riekes & Sons of Dallas, Inc., 351 S.W.2d 119 (Tex.Civ.App.—San Antonio 1961, writ ref'd n. r. e.). Whether the buyer discovered, or in the exercise of ordinary care should have discovered, the breach is usually a question of fact to be determined by the trier of the facts from all the facts and circumstances in evidence. 37 Tex.Jur.2d Limitation of Actions § 208. See Summers v. Bransford-Hinds Building Co., 383 S.W.2d 947 (Tex. Civ.App.—Eastland 1964, writ ref'd n. r. e.). It is, as appellant admits, the duty of one relying on the statute of limitations to plead, prove and secure findings sustaining such plea, and this is particularly applicable where the evidence is conflicting as in this case. Tenneco Oil Co. v. Rollans, 399 S.W.2d 217 (Tex.Civ.App.—Amarillo 1965, no writ).

We hold, therefore, that the evidence does not establish as a matter of law that appellee's claim for breach of implied warranty is barred by the two-year statute of limitations. Appellant's first point of error is overruled.

Appellant's second assignment is that if appellee's causes of action were not barred as a matter of law, the trial court erred reversibly in failing to submit appellant's requested special issues to determine the date limitations commenced. Appellant proposed a special issue inquiring if "there was visible evidence of a defect, if any, in the frames prior to April 23, 1966?" Conditioned upon an affirmative answer to this issue, the next issue proposed would have required the jury to find the month,

day and year the defect "was known to" appellee.

The trial court is required to prepare a written charge to the jury, Rule 271 [3], submitting the special issues of controverted questions of fact. Rule 272. Each party may present such special issues as he desires to be given to the jury. Rule 273. But the requested issue is required by Rule 274 to be set out distinctly and not obscured or submerged in a multitude of issues. Here, the record reflects that the two special issues on limitations were included among 65 special issues, six of which contained definitions, two additional definitions, and two instructions, covering 30 pages in the transcript, tendered with the request for submission embodied on another page signed by appellant's counsel. All were refused by the trial judge by one endorsement on a separate page.

From the transcript we are unable to determine in which order or manner these requests were submitted. Pages 104 through 124 of the transcript contain 56 of the proposed special issues. On page 125 is shown appellant's request for the submission "of the following special issues." Pages 126 through 128 contain proposed definitions and instructions. Pages 129 through 131 reflect nine proposed special issues. Some of the requested issues and definitions were but minute differentiations of matters contained in the court's charge; some were various shades and degrees of the matters included in the charge; one definition requested was almost identical to a definition contained in the court's charge; and other issues, reviewed in connection with the pleadings and evidence, were not proper issues. For example, the proposed unnumbered special issue shown on page 105 of the transcript is in almost the exact wording of special issue no. 27 given in the charge. The unnumbered requested issue shown on page 106, inquiring if the failure in question was caused by a misuse of the frames, is but a minute differentiation of the unnumbered issue shown on page 107 inquiring if the failure occurred as a result of an intended use of the frames. Neither of these issues is accompanied by or related to any other special issue requested. Obviously, standing alone, each issue is improper. The first unnumbered proposed issue appearing on page 109 is the exact proposed issue numbered 33 on page 121. The proposed issue no. 34 is the same issue the court submitted as no. 19. Five unnumbered proposed issues appearing on pages 109–110 concerning the dead load support of the frames were but a variation of the dead load inquired about in special issues numbered 22 through 24 in the court's charge. Four unnumbered proposed issues on page 115, inquiring if Lewis failed to determine if the roof was constructed so it had a three inch slope in accordance with the plans and specifications, were minute shadings of the submitted special issues numbered 35 through 37 inquiring if Lewis failed to provide elevation of three inch roof slope required by the plans and specifications. On appeal appellant makes complaint of only seven of the 65 rejected special issues, two of which are the limitation issues, and one of the rejected instructions, strengthening our conclusion that many of the matters requested were not proper. None of the separate pages is endorsed by the trial judge, and the court's refusal "of the attached special issues," shown on a separate instrument at page 103 of the transcript, demonstrates that at least the requested special issues were submitted en masse.

■ If the requested definitions and instructions were included with the requested special issues, they were a part of the bulk submission; if submitted separately, the record does not reflect that they were presented to or acted on by the trial judge, in which event they would be waived. While no exact standard is or can be proscribed for determining when

---

3. All references to rules are to Texas Rules of Civil Procedure.

such an en masse request shall be untenable, it is held consistently that requested special issues and instructions are to be requested separately, and it is not error for the trial judge to refuse such requested submissions when presented as one instrument and intermingled in such a way as to be confusing. Neither is the trial judge required to search the en masse tender to determine which requested issues, definitions and instructions are proper and which are improper. Furthermore, if one or more of the special issues requested en masse should not be given, as is evident in this situation, the court is justified in refusing to give any of them. Rule 274; Edwards v. Gifford, 137 Tex. 559, 155 S.W.2d 786 (1941); Sterling v. Tarvin, 456 S.W.2d 529 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n. r. e.). We are of the opinion, under the facts here, that the request made was legally insufficient.

 There is yet another reason why the court did not err in refusing the requested special issues on limitations. The ultimate and controlling question on the defense of limitations was when appellee discovered, or should have discovered in the exercise of ordinary care, the defect that breached the implied warranty. The first proposed special issue merely inquired if there was evidence of a visible defect prior to April 23, 1966. There was no element in this proposed issue charging *appellee* with discovery or the duty to discover the evidence of a visible defect. The second proposed issue, in inquiring when the defect was known to appellee, erroneously assumed an affirmative answer to the first issue charged *appellee* with the discovery of the defect. We do not view the requested issues to have been tendered in substantially correct form as required by Rule 279. While the rule does not require the requested issues to be absolutely correct, it does mean more than one that is merely sufficient to call the matter to the attention of the court. As we view the requested

issues of limitations they, as a group, are affirmatively incorrect. Under Rule 279, the defense of limitations, being a complete ground of defense, was waived by the failure to request a substantially correct issue. Therefore, appellant's second point of error is overruled.

 Appellant's third point is that the trial court erred in disregarding the jury's finding to special issue no. 18, and in failing to render judgment for appellant on its defense of volenti non fit injuria established by the jury's findings to special issues nos. 15 through 18. Volenti is an affirmative defense to a *negligence* action, Rabb v. Coleman, 469 S.W.2d 384 (1971), and, heretofore in Texas, the defense of volenti has been applicable to personal injury situations. Under our holding in connection with appellant's first point of error, appellee's recovery is on strict liability in tort, and not on negligence. Whether the defense of volenti or other related defenses described by semantic nomenclature—i. e., assumption of risk, misuse, improper use, duty to inspect—constitute a defense to a strict liability in tort action is an open question in Texas. Shamrock Fuel & Oil Sales Co. v. Tunks, 416 S.W.2d 779 (Tex.Sup. 1967). See Note, 2 Texas Tech L.R. 361 (1971). We have found no authority holding that such defense is or should be applicable where the threatened injury is to an immovable object. We think there is a difference where one, with the opportunity and means to immediately remove himself from the area of danger, nevertheless voluntarily exposes himself to the known danger, and the situation where an immovable object, such as appellee's building in this instance, once exposed to a known danger, is incapable of being extricated forthwith from the danger. Thus, there being no evidence that appellee could disentangle its building from the threatened danger, the trial court was correct in disregarding the jury's answer to special issue no. 18, and appellant's third point is overruled.

In its fourth point appellant alleges reversible error in the court's failure to submit its requested special instruction not to allow any damages that appellee could have mitigated by shoring the defective frames. In the fifth assignment error is ascribed to the trial court's failure to submit appellant's requested issues embracing appellee's failure to shore the frames, negligence and proximate cause. By the eighth point appellant assigns error to the trial court's failure to submit the requested issues inquiring as to the general contractor's failure to provide sufficient means for roof water to escape and whether such failure, if any, was a sole proximate cause of the roof collapse. These instructions and issues were a part of the requested matters submitted en masse. For the reasons stated in the antepenultimate paragraph, these points of error are overruled.

By its sixth assignment appellant contends special issue no. 3 was a comment upon the weight of the evidence; and the seventh assignment of error is that the court erred in failing to define the term "unreasonably dangerous" included in its definition of the term "defective condition" submitted in connection with such special issue. Special issue no. 3, conditionally submitted upon the jury finding, as it did, in special issue no. 2 that the ponding of water on the roof was proximately caused by excessive deflection of the rigid frames manufactured by appellant, together with the definition given, was as follows:

"Do you find from a preponderance of the evidence that such excessive deflection, if any, was proximately caused by a defective condition of the frames?

"Answer 'Yes' or 'No'

"ANSWER: <u>Yes</u>

"You are instructed that by the term 'defective condition', as used in the above and foregoing special issue, is meant that the steel frames, as designed and manufactured, were not reasonably fit for the purpose for which they were supplied, so that they were unreasonably dangerous to the property of Plains Textiles, Inc."

With respect to the issue, appellant's position is that the jury was asked to determine both proximate cause and defect in this one issue, and that this was a reversible comment on the weight of the evidence. We do not agree that the issue is subject to the specific objection made to it. To constitute a comment on the weight of the evidence, the special issue must be worded so as to indicate an opinion by the trial judge as to the verity of the fact inquired about. In our opinion the issue did not assume the nature of the answer. In appraising the definition objected to for its failure to define the term "unreasonably dangerous," it should be noted that the comment in 2 Restatement of Torts 2d § 402A advises that "unreasonably dangerous" means the article "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." A definition is essential only when the term is a legal expression having a meaning unknown to laymen, or is used in the charge in a peculiar legal sense, or used under circumstances which might confuse or mislead unless explained, 3 McDonald Texas Civil Practice § 12.14.3(c) Definitions, and we do not consider the term "unreasonably dangerous," as used in this instance, to fall within any one of these three categories. The term was used in its ordinary meaning and a definition of it was not necessary to enable the jury to properly consider and answer the special issue. Considered in reference to the evidence and issues before the jury, we do not believe the issue as framed, and the definition submitted in connection therewith, if subject to the objections levelled against them, are so erroneous as to cause such a denial of the rights of appellant as was reasonably calculated to cause, and probably did cause, the rendition of an

improper judgment in this case. Rule 434. Therefore, we overrule appellant's sixth and seventh points.

■ Appellant next presents in its ninth point a contention of error by the trial court in submitting special issue no. 51(a), inquiring if appellant, after notice of the defects, represented to defendant Eppes that the structure was sound, because this issue constitutes a comment on the weight of the evidence, since it was disputed whether or not appellant had notice of any defect. Without copying the issue in full, it is sufficient to answer the contention by stating that, if there were in fact error in the issue, it is immaterial and harmless since the issue pertained only to the cross action between Eppes and appellant, and formed no basis for appellee's ground of recovery. Furthermore, that portion of the judgment relieving Eppes from liability has not been appealed and is final. Appellant's ninth point is overruled.

Appellant's tenth and last point asserts error in the awarding of interest from April 23, 1966, the date the roof failed, and not from the date of judgment. We sustain appellant's point.

■ The test appears to be whether or not the measure of the recovery or claim, and not necessarily the amount of damages, is fixed by the conditions existing at the time the injury arose or was inflicted. If the measure is determinable at the time of the injury, interest is properly awarded from the time of the injury, Davidson v. Clearman, 391 S.W.2d 48 (Tex.Sup.1965); Beck v. Lawler, 422 S.W.2d 816 (Tex.Civ. App.—Fort Worth 1967, writ ref'd n. r. e.); if not, interest proceeds from date of judgment. Parks v. Benson Co., Builders, 393 S.W.2d 700 (Tex.Civ.App.—Fort Worth 1965, writ ref'd n. r. e.). In the present case, the measure of damages certainly was not determinable at the date of the injury. When part of the roof collapsed, the extent of the damage to the building was not determined nor was it possible to immediately arrive at a conclusion as to what corrective action would be necessary to render the structure usable for the purpose intended. Even appellee did not profess to then know the measure of damage. It evolves from the evidence that an independent architectural firm and representatives of appellant and of Stout Steel Builders, Inc., made various suggestions as to how the damage could be rectified, most of which were not accepted by appellee. Ultimately appellee determined that the building could be "shored up" so as to make it usable. Later appellee determined that future water damage to machinery enclosed in the structure might be averted by moving the machinery. On the day part of the roof failed, only a part of the damages could have been computed by appellee, and it was only after much investigation, maneuvering of machinery, and acceptance of bids that appellee by extraneous evidence was able to assess its damages. Under these circumstances, we hold that, the measure of damages not having been determinable at the time of the roof collapse, interest will not lie from the date of the roof failure, but from the date of judgment. The judgment is reformed to provide for interest from September 4, 1970, the date of judgment.

As reformed, the judgment of the trial court is affirmed.