855 F.2d 203
 DALLAS POWER & LIGHT COMPANY, Texas Power & Light Company,
Texas Electric Service Company, Texas Utilities Generating
Company, Texas Utilities Electric Company, Texas Utilities
Mining Company, and Texas Utilities Services, Inc.,
Plaintiffs-Appellants,
v.
WESTINGHOUSE ELECTRIC CORPORATION, Defendant-Appellee.
 No. 87-1446.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 19, 1988.
 
 1
 Wm. Stephen Boyd, Travis E. Vanderpool, Worsham, Forsythe, Sampels & Wooldridge, Dallas, Tex., for plaintiffs-appellants.
 
 
 2
 David C. Godbey, R. Doak Bishop, Hughes & Luce, Dallas, Tex., for defendant-appellee.
 
 
 3
 Appeal from the United States District Court for the Northern District of Texas.
 
 
 4
 Before GARWOOD and JONES, Circuit Judges, and HITTNER*, District Judge.
 
 HITTNER, District Judge:
 
 5
 Plaintiffs-Appellants ("DP & L") appeal the trial court's grant of summary judgment in favor of Defendant-Appellee Westinghouse Electric Corporation ("Westinghouse"). We affirm the trial court's decision.
 
 FACTS
 
 6
 Westinghouse contracted to sell DP & L a large steam turbine generator used to produce electric power (the "sales contract"). In addition, Westinghouse contracted with DP & L to provide inspection and maintenance of the generator (the "service contract"). Finally, the parties entered into a one-year service consultant contract dated June 1, 1975, pursuant to which Westinghouse agreed that its employee, Mr. Tom Hardin, would provide continued technical expertise in proper preventative maintenance and inspection (the "Hardin Contract"). This last contract was renewed seven times and was in effect at the time of the incident that is the subject of this suit.
 
 
 7
 On March 12, 1982, as the generator unit was being taken out of service for maintenance and inspection, it was discovered that the unit had been damaged, apparently when a balance weight on the rotor face of the turbine generator came loose. DP & L and Westinghouse entered into a tolling agreement on or about March 8, 1984, effective from March 6, 1984, pursuant to which the running of limitations on DP & L's claims against Westinghouse was tolled for thirty-seven days, from March 6 through April 11, 1984. DP & L filed suit on April 13, 1984.
 
 
 8
 Westinghouse filed its Motion for Summary Judgment asserting that DP & L's suit is time-barred based upon contractual, statutory, and common law limitations.[1] The trial court granted Westinghouse's motion, from which grant DP & L appeals.
 
 
 9
 DP & L contends that the district court erred in holding DP & L's claims time-barred and erred in failing to consider DP & L's claims for breach of the implied warranty to perform services in a good and workmanlike manner.
 
 ANALYSIS
 
 10
 I. DP & L's Claims for Negligent Design, Manufacture, and Installation
 
 
 11
 DP & L contends that the trial court erred in holding that DP & L's claims for negligent design, manufacture, and installation were time-barred. The parties agree that the two-year limitations period contained in Tex.Civ.Pract. & Rem.Code Sec. 16.003 applies to the negligence actions. They disagree, however, on when a cause of action accrues for purposes of that statute. DP & L argues that the statutory period only began to run on March 12, 1982, when the damage was discovered. Westinghouse maintains that any cause of action for negligent design, manufacture, and installation accrued by January 25, 1975, the date that the generator became operational.
 
 
 12
 The "legal injury" rule determines when a cause of action accrues in Texas for negligent damage to property. The doctrine was initially articulated by the Texas Supreme Court in Houston Water-Works v. Kennedy, 70 Tex. 233, 8 S.W. 36 (1888). In that case, Houston Water-Works had cut an arch in a wall of Kennedy's building. The arch subsequently cracked. Kennedy brought suit more than two years after the construction, but less than two years after the damages occurred. In holding the action time barred, the court stated:
 
 
 13
 If it be true that the cause of action accrued at the time the arch was cut, then the action was barred. The action was one that would be barred in two years after the cause of action accrued, and the inquiry is, when did the cause of action accrue? The arch and house alleged to have been injured were the property of the appellee at the time the arch was cut. This was an act wrongful toward the owner of the property, for which an action might have been maintained as soon as the tort was committed. When an act is in itself lawful as to the person who bases an action on injuries subsequently accruing from, and consequent upon, the act, it is held that the cause of action does not accrue until the injury is sustained.
 
 
 14
 ....
 
 
 15
 If, however, the act of which the injury was the natural consequence was a legal injury,--by which is meant an injury giving cause of action by reason of its being an invasion of a plaintiff's right,--then, be the damage however slight, limitation will run from the time the wrongful act was committed, and will bar an action for any damages resulting from the act, although these may not have been fully developed until within a period less than necessary to complete the bar.
 
 
 16
 Id., 8 S.W. at 37.
 
 
 17
 The legal injury rule thus requires the presence of two factors in order for a cause of action to accrue at the time of negligent design, manufacture, or installation. First, the property alleged to be negligently designed, manufactured or installed must be property of the plaintiff, so that the negligent act is one wrongful toward the owner at the time of the act. Second, at the time of the complained-of conduct, some damage, however slight, must have occurred.
 
 
 18
 In the instant case, as in the cases relied upon by Westinghouse, the turbine generator became DP & L's property, and DP & L's legal interest was invaded at the time of the sale or installation of the allegedly defectively manufactured or installed generator. See Metal Structures Corp. v. Plains Textiles, Inc., 470 S.W.2d 93 (Tex.Civ.App.--Amarillo 1971, writ ref'd n.r.e.); Olson v. Passero, 402 S.W.2d 953 (Tex.Civ.App.--El Paso 1966, writ ref'd n.r.e.). It is evident that, assuming a defect in design, manufacture or installation, some deterioration, and thus some damage, began to occur at the time the generator became operational. DP & L's causes of action for negligent design, manufacture and installation thus accrued at the latest on the date that the generator became operational and are barred by the two-year statute of limitations. The trial court's grant of summary judgment in favor of Westinghouse on this issue was, therefore, proper.
 
 
 19
 II. DP & L's Claims of Negligent Inspection, Maintenance and Failure to Warn
 
 
 20
 The district court also held that DP & L's claims of negligent inspection, maintenance, and failure to warn are time-barred. Again, we affirm.
 
 
 21
 These claims refer to performance under the service contract and the Hardin Contract. Under Texas law, the legal injury rule set forth above also applies to the rendition of professional services. See, e.g., Quinn v. Press, 135 Tex. 60, 140 S.W.2d 438, 441 (1940). Consequently, the cause of action concerning any allegedly negligent service or consultation accrued at the time of performance of the service or consultation. Allowing for the parties' 37-day tolling agreement, any claim of negligent inspection, maintenance, or failure to warn that accrued prior to March 6, 1982, is time-barred.
 
 
 22
 The portion of the generator that was damaged was not available for servicing except when the generator rotor was removed from the generator. Furthermore, the balance weights and weight lockplates that DP & L complains Westinghouse negligently failed to inspect could not be inspected except when the generator rotor was removed from the generator. DP & L has produced no proof establishing that the generator rotor was removed for servicing and that Westinghouse undertook any inspection of the generator on or after March 6, 1982. Thus, DP & L has not raised a factual issue as to any alleged negligence in inspection or maintenance under the service contract which is not time-barred.
 
 
 23
 DP & L argues that aside from the service contract, Westinghouse was under a perpetual obligation because of the Hardin Contract to have warned of potential damage. There is no summary judgment evidence to support such an obligation. On the contrary, as set forth above, the evidence shows that the balance weight lockplates could be inspected only when the rotor was removed from the generator. The summary judgment evidence established that Mr. Hardin could not have had responsibility for the lockplates except where they were removed and available for inspection. As previously stated, there is no evidence to show that the rotor was removed on or after March 6, 1982. Summary judgment on the ground that DP & L's claims of negligent inspection, maintenance, and failure to warn are time-barred is therefore appropriate.
 
 
 24
 III. DP & L's Claims Based on Express and Implied Warranties Arising from the Sales Contract
 
 
 25
 Article 15 of the sales contract between DP & L and Westinghouse contained the following warranty provision:
 
 
 26
 Seller warrants to Purchaser that all equipment furnished under this Contract shall be free from defects either in material or workmanship and shall be suited in all respects both for the purposes for which it is specified hereunder to be sold and for all other uses for which it may be represented in writing by the Seller to be suited. Seller also warrants to Purchaser the successful operation of all such equipment. Seller shall be required to correct any defect, including any non-conformance with the specifications, at Seller's expense which may appear in such Equipment within one year from the initial date of synchronization. Except to the extent hereinafter in this paragraph otherwise provided, Seller's liability under this Article shall in no case (except as to the implied warranty of title) exceed the cost of repairing or replacing any defective or damaged parts or materials. If the Equipment furnished under this Contract is installed by Seller and any defects in material or workmanship, including any non-conformance with specifications, appear within the period of time in this paragraph above set forth, then, in addition to repairing or replacing any defective or damaged parts or materials, Seller shall negotiate with Purchaser as to the extent of the additional burden or responsibility, if any, that Seller shall assume in completely and satisfactorily correcting any such defects or damages.
 
 
 27
 (Emphasis added.)
 
 
 28
 The district court held that the above provision bars DP & L's claims for Westinghouse's alleged breach of express warranties occurring more than one year from synchronization. DP & L argues that the proper construction of this provision is that the one-year limitation applied only to Westinghouse's obligation to personally repair damage to the generator, not to its liability to reimburse DP & L for any costs of repair. The language of the provision, however, unambiguously states otherwise. Referring to the one-year limitation, the provision states: "Seller's liability under this article shall in no case ... exceed the cost of repairing or replacing any defective or damaged parts or materials." Thus, the provision clearly anticipates the reimbursement for costs of repair as well as personal repair or replacement by Westinghouse.
 
 
 29
 DP & L's second argument against application of the one-year limitation is that other provisions of the contract contain warranties of future performance. Pursuant to Texas law, "only express warranties may explicitly extend to future performance." Safeway Stores, Inc. v. Certainteed Corp., 710 S.W.2d 544, 546 (Tex.1986) (emphasis in the original).
 
 
 30
 DP & L contends that the following contract provisions qualify as express warranties:
 
 
 31
 The Units shall be clean inside and outside, in first class condition throughout, for complete demonstration of their capability of performing in commercial operation continuously, up to the maximum guarantees as provided in Purchaser's Specifications....
 
 
 32
 ....
 
 
 33
 ... Seller shall be wholly responsible for the Turbine-Generator Units meeting their performance guaranties....
 
 
 34
 ....
 
 
 35
 Seller warrants to Purchaser that all equipment furnished under this Contract shall be free from defects either in material or workmanship and shall be suited in all respects both for the purposes for which it is specified hereunder to be sold and for all other uses for which it may be represented in writing by the Seller to be suited. Seller also warrants to Purchaser the successful operation of all such Equipment.
 
 
 36
 ....
 
 
 37
 Equipment covered in this specification shall comply with all the currently approved applicable Standards....
 
 
 38
 ....
 
 
 39
 In all respects, motors shall incorporate the highest quality of modern engineering, design, and workmanship.
 
 
 40
 Antifriction bearings for motors shall have a minimum Rating Life of 131,000 hours (l5 years ) for the bearing loading....
 
 
 41
 ....
 
 
 42
 Seller shall furnish ... the information listed ... to confirm that the motor is suitable for the service conditions specified.
 
 
 43
 (Emphasis added.)
 
 
 44
 For an express warranty to explicitly extend to future performance "it must make specific reference to a specific date in the future." Safeway Stores, 710 S.W.2d at 548. DP & L points to no specific date in the above provisions, nor does the Court discern any. DP & L's contract claims are thus limited by the one-year provision of Article 15 and are time-barred.
 
 
 45
 IV. DP & L's Claims for Breach of the Implied Warranty to Perform Services in a Good and Workmanlike Manner
 
 
 46
 Finally DP & L seeks to fit the facts of this case within the newly created cause of action of implied warranty to perform repair and modification services in a good and workmanlike manner. Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349 (Tex.1987) (Melody Home II ). This Court holds that the facts of this case do not fall within the narrow implied warranty created by Melody Home II.
 
 
 47
 The plaintiffs in Melody Home II purchased a modular prefabricated home from Melody Home. More than two years after moving into the home, the plaintiffs discovered that a sink was not connected to the drain in one of the interior walls. Workmen from Melody Home came out twice to work on the problem, but their repair efforts were unsatisfactory, and additional damages were caused by the repair. The Texas Supreme Court held that the plaintiffs could sue under the Deceptive Trade Practices Act to allege breach of an implied warranty to repair or modify in a workmanlike manner.
 
 
 48
 The distinction between Melody Home II and the instant case is manifest. In Melody Home II repairs were undertaken and were allegedly not performed in a workmanlike manner. In the instant case, DP & L makes no allegation that repairs were attempted pursuant to either the service or the Hardin contracts or that such repairs were faulty. Instead, DP & L appears to be alleging that, pursuant to those contracts, Westinghouse had the duty to make repairs and failed to do so. DP & L thus fails to state a claim for breach of implied warranty to repair or modify in a workmanlike manner, but simply reiterates its claims of breach of contract and negligent failure to maintain.
 
 V. Conclusion
 
 49
 For the reasons set forth above, the district court's grant of summary judgment in favor of Defendant-Appellee Westinghouse Electric Corporation is AFFIRMED.
 
 
 
 *
 District Judge of the Southern District of Texas, sitting by designation
 
 
 [1]
 Westinghouse also asserted that DP & L's negligence claims were precluded because Texas law does not recognize a negligence claim for purely economic loss to property. Our recent holding to that effect in Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp., 844 F.2d 1174 (5th Cir.1988), provides an alternative ground for affirmance of summary judgment in Westinghouse's favor on the negligence claims