**I. RICHKER et ux., Appellants,**

**v.**

**UNITED GAS CORPORATION et al.,**
**Appellees.**

**No. 15375.**

Court of Civil Appeals of Texas.

Houston.

Dec. 30, 1968.

Rehearing Denied Jan. 23, 1969.

J. Leonard Gotsdiner, Ranseler O. Wyatt, Houston, for appellants.

Baker, Botts, Shepherd & Coates, Perry Barber, Jr., Houston, for appellees.

COLEMAN, Justice.

This is a suit involving the failure of certain air conditioning equipment to perform properly. At the conclusion of the plaintiffs' case, the trial court instructed a verdict for the defendant.

The facts will be reviewed in the light most favorable to the appellants.

I. Richker was the owner of a six story office building. This building was designed in such a manner that air conditioning was required, there being no provision for cooling in any other manner. Prior to March 4, 1960, the building was equipped

with Chrysler Air Temp electrical cooling equipment. Appellant approached appellee, United Gas Corporation, concerning the replacement of the electrical equipment with gas powered equipment. He entered into negotiations with appellee Jack D. Pack, a sales engineer for United Gas. On March 4, 1960, Mr. Richker signed a contract for the installation of a 76 ton Ready Power Natural Gas Engine Compressor, complete with power take off and condensing water pump, all controls and control panel, six new summer and winter thermostats, exhaust fan in equipment room, new refrigeration piping, all plumbing and electrical wiring required, six additional solenoid valves, removal of existing traps in refrigeration lines as required, insulation of equipment room, new insulation on refrigeration lines as required, removal of existing equipment, delivery and erection of new equipment, starting and testing of equipment, and "one year free service on parts and labor on equipment furnished above."

The contract provided that the purchaser shall furnish equipment room, existing duct work, grilles and registers, existing water tower and condensers, existing plumbing and electrical services, existing air handlers, coils and filters.

Other pertinent provisions of the contract are:

"This instrument is subject to the further terms and conditions shown on the reverse side hereof, all of which are made a part hereof and now agreed to by Purchaser. Purchaser acknowledges receipt of a true copy hereof and agrees that this Conditional Sale Agreement and said specifications cover and include all agreements between the parties, no representation, covenant or warranty except those set out either herein or in said specifications being binding on Seller."

"Seller warrants the equipment installed pursuant to these specifications to be free from defects in material and workmanship for a period of one (1) year from the date of original installation and will repair or replace free of cost to the Purchaser any parts which the manufacturer's examination shall disclose to its satisfaction to be thus defective. * * *"

"Performance Guarantee"
"Unit will deliver 76 tons of air conditioning under ASRE rated conditions. 'Summer Only' "

"In the event Seller is unable to meet these conditions with equipment to be supplied by this agreement, Seller shall have the option to either (i) supplement the equipment specified hereunder or (ii) remove the equipment and return all money paid by purchaser, less any agreed amount which compensates the Seller for results actually obtained which are beneficial to Purchaser, or the actual value of the equipment otherwise retained and usable by Purchaser. In no event, however, shall Seller be obligated to pay or refund to Purchaser as damages or otherwise any sums in excess of the amount paid to Seller by Purchaser in the event Seller elects to remove the equipment."

"Seller will render reasonable adjustment service on the equipment installed for a period of one (1) year from the date of original installation."

On April 20, 1960, I. Richker signed an instrument, entitled "Contract Completion Record", providing, in part:

"This is to record that the machinery and materials, installed in the above location have been put into operation April 20, 1960 and have been satisfactorily completed.

"The machinery and materials as furnished are hereby accepted in fulfillment of contract, subject to guarantee of workmanship and materials."

This instrument was also signed by Jack D. Pack as Sales Engineer and J. R. Hobbs as Construction Superintendent. It

was written on stationery of J. R. Hobbs Co.

The contract document was a form used by United Gas Corporation. In several places the name "United Gas Corporation" had been struck through and the name "J. R. Hobbs Co." inserted. Appellant testified that his negotiations were with representatives of United Gas, principally Mr. Pack, and that he thought he was buying the equipment from United Gas. He testified that the name "J. R. Hobbs Co." had not been substituted for "United Gas Corporation" when he signed the contract, and that he did not receive a copy of the contract. The contract introduced into evidence was executed by J. R. Hobbs Co., and not by United Gas Corporation. An assignment from J. R. Hobbs Co. to United Gas Corporation was introduced into evidence by the terms of which United Gas acquired "all rights, title, liens, equities and reservations given to or reserved in Seller by that certain Conditional Sales Agreement for air conditioning installations entered into between Seller and Richker Properties * * * on the 4th day of March, 1960, and registered as a chattel mortgage and cross-indexed as a lien on Machinery Situated on Realty in the Records of the County Clerk of Harris County under File No. 775940." This was dated April 20, 1960. The contract provided for sixty monthly payments. The payments were made to United Gas and the contract was paid in full on 10–6–61 in connection with a re-financing arrangement on the building.

The actual installation of the machinery was supervised by a representative of the manufacturer until he became ill, after which time the supervision of the work was done by Harry Young, an employee of United Gas. There is no evidence as to the stage of completion at the time Mr. Young took charge of the work.

The equipment was maintained by United Gas personnel without charge under the service provision of the contract. For several months thereafter United Gas responded to calls for service on a fee basis. There is testimony that there was excessive vibration and overheating of the engine within a short time after installation. The necessity for repairs and adjustments caused the building to be without cool air a number of times prior to the filing of this suit on May 10, 1963. In July, 1962, and in September of 1962, there were explosions involving part of the equipment damaging the light bulbs and resulting in oil damage to the carpets of some of the tenants. The building would get very hot during the summer months when the air conditioning machines were shut down. As a result some of the tenants moved from the building and the reputation of the building was damaged. Many of the offices have been vacant to the date of the trial.

There was testimony that the primary trouble with the machine was excessive vibration, which, in turn, resulted from the fact that a two inch gas pipe supplying the building was reduced in size to one inch before reaching the gas engine compressor. This resulted in an inadequate volume of gas for the machine to operate properly. The fact that the trouble was caused by an inadequate volume of gas traceable to the reduction in the size of the line was discovered after the second explosion in 1962. There was testimony that after the one inch line was replaced the engine operated properly, but soon had to be replaced.

Appellants contend that the trial court erred in taking the case from the jury and rendering judgment for the appellees because the evidence raised issues of fact, which, if found in their favor, would establish liability on the basis of negligent installation or breach of an implied warranty that the installation was performed in a good and workmanlike manner. Appellants also contend that there was evidence to raise an issue of fact regarding breach of warranty that the equipment was "suitable for the work required", and that appellees were guilty of negligence in

maintaining the equipment in that they failed to find the defect in installation which caused the machine to malfunction.

Appellees contend that appellants' cause of action is barred by the two year statute of limitations and that appellants failed to present evidence from which their damage could be ascertained.

It is undisputed that there was no written contract between appellants and appellees. Appellants signed the contract introduced into evidence. If we give credence to the testimony that the agreement was reached between appellants and appellees and that appellants did not know that J. R. Hobbs Co. was the seller, appellants necessarily must rely on an oral contract with United Gas, the terms of which are found in the written agreement. United Gas admits that it assumed the obligation to service the equipment for one year, and the evidence establishes that it did so.

▬ The two year statute of limitations, Art. 5526, Vernon's Ann.Civ.St., is applicable both to the cause of action based on implied warranties and to that based on negligence. Linkenhoger v. American Fidelity & Casualty Co., 152 Tex. 534, 260 S.W.2d 884 (1953); Quinn v. Press, 135 Tex. 60, 140 S.W.2d 438, 128 A.L.R. 757 (1940); Fort Smith v. Fairbanks, Morse & Co., 101 Tex. 24, 102 S.W. 908 (Tex. 1907); Puretex Lemon Juice, Inc. v. S. Riekes & Sons of Dallas, Inc., Tex.Civ. App., 351 S.W.2d 119 (San Antonio Civ. App.1961, error ref., n. r. e.); Cooper-Bessemer Corp. v. Shindler, 132 S.W.2d 450 (Tex.Civ.App., 1939); Bishop-Babcock-Becker Co. v. Jennings, 245 S.W. 104 (Austin Civ.App.1922).

The real question in this case is whether two years elapsed after the injury was discovered or should have been discovered by the appellants. Summers v. Bransford-Hinds Building Company, 383 S.W.2d 947 (Eastland Civ.App., 1964, error ref., n. r. e.). It is undisputed that the suit was filed more than two years after the installation of the equipment and after the termination of the one year maintenance contract.

▬ A cause of action based on negligence arises when the negligent act is committed if such act constitutes the invasion of a legally protected interest of another, otherwise the cause of action arises when injury results from the negligent action. Linkenhoger v. American Fidelity and Casualty Co., supra; Puretex Lemon Juice v. S. Riekes & Sons of Dallas, Texas, Inc., supra.

In Bishop-Babcock-Becker Co. of Texas v. Jennings, supra, the Court said:

"Our Supreme Court has held that the statute of two years applies in an action of this kind, the suit being for a breach of implied warranty. Smith v. Fairbanks, Morse & Co., 101 Tex. 24, 102 S. W. 908. The question is more fully discussed in the opinion of the Court of Civil Appeals in the same case, 99 S.W. 705. This statute applies even though the goods were purchased under written contract (Kirwan v. Alamo Iron Works [Tex.Civ.App.] 155 S.W. 986), and even where fraud is alleged (Gordon v. Rhodes & Daniel, 102 Tex. 300, 116 S. W. 40).

"There are allegations in the petition here that appellee's damages continued to accrue up to November 1, 1918, when the carbonator was returned by appellee, and therefore it is claimed the suit was brought in time. We think this contention is settled adversely to appellee by Smith v. Fairbanks, Morse & Co., supra. The holding was that the cause of action arose at the time of the breach, whether the damages had then accrued or not, and the Supreme Court expressly approved the decision of the Court of Civil Appeals on that point. It was also there decided that the acts of the vendor's agents in undertaking to repair or remedy defects in the machinery, after installation and assurances given, would not affect the question of limitation, but that

the statute was put in motion by the breach and discovery thereof, and was not interrupted by subsequent attempts to remedy the defects nor by assurances given."

In their brief appellees state: "A history of excessive vibration of the engine is apparent from the very beginning." Appellant I. Richker testified that trouble developed immediately with the equipment and complaint was made to the defendant. The defendants were called in as much as twice a week. The defendants attempted to correct the condition by placing cushions under the motor. He testified that after the installation of the equipment in March or April of 1960, he had a lot of trouble with vibration and noise. It would be a day or two days before cooling would be resumed after a breakdown. "The tenants all complained." He warned Mr. Pack many times that the machine was broken down and he wasn't getting any air conditioning. After the expiration of the first year he asked United Gas to continue servicing the machine and paid them for the necessary labor and parts until the second explosion.

From this testimony of I. Richker, it is established that he suffered injury during the year 1960. He was in possession of facts upon which he could have asserted a claim for relief in the courts of this State. While the particular defect which he contends caused the machinery to fail to perform properly was not known to him, the fact that the machine was defective was known to him and he had suffered injury, more than two years before the suit was filed. This is no evidence raising a duty to seek out defects in installation, or of negligence in making repairs, after the end of the maintenance contract. The trial court properly held that appellants' cause of action was barred by the two year statute of limitations.

In view of this holding, and of the fact that the parties have not briefed the question, we do not determine the applicability or effect of the provisions of the agreement limiting the term of the warranties and the liability of the seller thereunder. See 46 Amer.Jur., Sales, § 333, pp. 815–816.

Other points of error are presented by appellants, but, under our view of the applicable law on the controlling issue of limitations they are immaterial and would not require a reversal of the case if sustained.

The judgment of the Trial Court is affirmed.