Opinion issued October 31, 2006 






In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01109-CV




ERIC AND BEVERLY HIXON, Appellants

V.

TYCO INTERNATIONAL, LTD; D/B/A SIMPLEX PRODUCTS; K2, INC.
D/B/A SIMPLEX PRODUCTS; AND PEDIGO SERVICES, INC., Appellees




On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2001-62472-A




MEMORANDUM OPINION 

          This is a residential construction-defect case resolved by summary judgments. 
Appellants, Eric and Beverly Hixon, plaintiffs in the trial court, challenge summary
judgments rendered in favor of appellees, Tyco International, Ltd d/b/a Simplex
Products (Tyco), K2, Inc. d/b/a Simplex Products (K2), and Pedigo Services, Inc.
(Pedigo). The Hixons present eight issues. As to Pedigo, the Hixons argue that the
trial court erred by rending traditional summary judgment in favor of Pedigo based
on limitations, by dismissing claims newly asserted against Pedigo in the Hixons’
third amended petition that Pedigo did not address in moving for summary judgment,
and by denying the Hixon’s motion for new trial against Pedigo. The Hixons also
contend that their summary judgment evidence was sufficient to overcome Pedigo’s
no-evidence motion for summary judgment. As to K2 and Tyco, the Hixons
challenge the traditional summary judgment rendered in favor of K2 and Tyco on
limitations grounds and on grounds not addressed by motion for summary judgment. 
The Hixons also challenge the trial court’s refusals to grant their objections to their
opponents’ summary judgment evidence.
          We affirm in part and reverse and remand in part. 
Factual Background
          In 1994, Beverly and Eric Hixon hired Ausmus Homes, Inc. (Ausmus) to
construct a residence. The house was designed to have exterior walls covered in
artificial stucco. Ausmus served as general contractor for the construction and hired
Pedigo Services, Inc. (Pedigo) to install the roof of the house. According to Eric
Hixon, Pedigo issued an express warranty that the roof would last at least 12 years. 
The Hixons allege that K2 manufactured the artificial stucco, known as EIFS cladding
or “Finestone,” used on the exterior of the house, and that Tyco took over K2’s
Finestone division after the artificial stucco finish was installed on the Hixons’ house. 
The record contains an unsigned, undated, seven-year warranty certificate bearing the
trade name Finestone and the corporate name Simplex.


 
          Leaks in either the roof or the EIFS cladding or the manner in which they were
joined, applied, or both, resulted in water intrusions into the house in 1995. Leaks
increased dramatically in mid-1997, however, and resulted in separation of the EIFS
cladding from the structure on the east side of the house, rotted studs on that side,
revealed when the cladding was removed for inspection in fall 1998, and damaged
plywood sheathing on the same side, revealed when the sheathing was removed for
inspection in 1999. Pedigo and Finestone repaired these problems in 1998 and 1999. 
          The Hixons contend that they were assured after the repairs that were done in
1998 and 1999, that there were no remaining problems with the house. In 2000,
however, the Hixons noticed new leaks in ceilings and walls that had not leaked
before. They contacted Pedigo, which attempted numerous repairs, but Pedigo
eventually refused to conduct any further repairs. 
          In 2001, the Hixons retained French Engineering, Inc., to inspect the house. 
French Engineering’s report identified many defects related to installation of the roof
and the EIFS cladding. Based on the defects identified by the report, the Hixons filed
suit in December 2001, claiming that Pedigo did not properly install the roof. On
June 28, 2002, the Hixons joined K2 and Tyco as defendants, claiming that they had
manufactured and installed a defective artificial-stucco siding product. 
          The Hixons’ live pleadings state that the defects in the house were “inherently
undiscoverable,” with due diligence, and “not objectively verifiable until February
or March 2000.” The pleadings further state, however, that the Hixons observed
“severe wood deterioration in the plywood sheathing and wood studs” of the house
as early as 1998.


 
          The Hixons contend that all defendants were negligent in several respects. 
Theories of liability against Pedigo included negligent performance of an
undertaking; breach of common law express and implied warranties, under the
Deceptive Trade Practices—Consumer Protection Act (DTPA)


; contentions that
Pedigo had further violated the DTPA by fraudulently concealing defects in the
house; and alleged violations of the Residential Construction Liability Act, chapter
27 of the Property Code.


 Theories of liability against Tyco and K2 (designated as
Simplex) included products liability, premised on an allegedly defective product;
strict tort liability; negligent product design; negligent product distribution; breach
of implied and express warranties; misrepresentation; and fraud and
misrepresentation violations of the DTPA. The Hixons sought recovery of actual
damages and mental anguish damages, in addition to attorney’s fees.
          K2 and Tyco were not sued until June 28, 2002, but promptly filed a joint
motion seeking both no-evidence and traditional summary judgments in September
2002. The record shows no ruling by the trial court on the motions until much later. 
Pedigo filed a no-evidence motion for summary judgment in April 2004. A month
later, Pedigo filed a traditional motion for summary judgment contending that
limitations barred the Hixons’ claims. The Hixons replied with a series of responses
and objections and by amending their pleadings. 
          The trial court conducted a hearing on Pedigo’s motions on July 2, 2004 and
took the motions under advisement pending receipt of supplemental summary
judgment evidence from the Hixons. After the Hixons filed additional responses,
objections, an amended affidavit by Eric Hixon as to Pedigo and additional summary
judgment proof, the trial court signed an order granting Pedigo’s traditional motion
for summary judgment on August 9, 2004, dismissing all claims against Pedigo with
prejudice. K2 and Tyco then reurged their previously filed motions for summary
judgment, to which the Hixons filed a response and supplemental summary judgment
evidence, including an additional amended affidavit by Eric Hixon. The trial court
ruled in favor of K2 and Tyco, again dismissing the Hixons’ claims with prejudice,
but did not state whether the judgment rendered was on no-evidence or traditional
grounds. The trial court denied the Hixons’ motion for new trial as to Pedigo on the
same day. An order of severance rendered the judgment final for appeal.
Standard of Review
          We review summary judgments de novo according to well-settled standards of
review. See Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005);
Nixon v. Mr. Prop. Mgmt., 690 S.W.2d 546, 548 (Tex. 1985) (traditional summary
judgment pursuant to Tex. R. Civ. P. 166a(c)); Flameout Design & Fabrication, Inc.
v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex. App.–Houston [1st Dist.]
1999, no pet.) (no-evidence summary judgment pursuant to Tex. R. Civ. P. 166a(i)). 
We must affirm a summary judgment rendered on traditional, rule 166a(c) grounds
if any of the grounds asserted by the movant is meritorious. FM Props Operating Co.
v. City of Austin, 22 S.W.3d 868, 872–73 (Tex. 2000). We may not, however, affirm
a summary judgment on grounds not addressed by the movant in seeking summary
judgment. See Sci. Spectrum v. Martinez, 941 S.W.2d 910, 912 (Tex. 1997);
McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1983). 
Objections to Summary Judgment Evidence
          In their eighth issue, the Hixons argue that the trial court “failed to specifically
and timely rule” on objections the Hixons had presented “regarding inadmissible and
insufficient evidence” submitted by Pedigo and Finestone. The Hixons acknowledge
that the summary judgment record contains no express ruling on their objections by
the trial court. Indeed, their issue is premised on that complaint. 
          Well-settled principles govern preservation of error for evidentiary rulings. See
Tex. R. App. P. 33.1; Tex. R. Evid. 103. We emphasize at the outset that the
summary judgment record does not show that the trial court “refused to rule” or that
the Hixons “objected to the refusal” to rule. See Tex. R. App. P. 33.1(a)(2)(B) (stating
requirements for preserving error based on trial court’s refusal to rule). In support of
their contention that we may nonetheless review their complaint, the Hixons rely on
subsection (a)(2)(A) of rule 33.1(a). See Tex. R. App. P. 33.1(a)(2)(A). Noting that
this rule of preservation, adopted in 1997, recognizes “implicit” rulings as bases for
complaints on appeal, the Hixons also rely on an opinion of the Fort Worth Court of
Appeals in Blum v. Julian, 977 S.W.2d 819 (Tex. App.—Fort Worth 1998, no pet.). 
The court in Blum held that an order granting summary judgment warrants an
inference that the trial court reviewed, but overruled, the nonmovant’s objections to
the movant’s summary judgment evidence. Id. at 823; see also Frazier v. Yu, 987
S.W.2d 607, 619 (Tex. App.—Fort Worth 1999, pet. denied) (holding that order
granting summary judgment, stating that trial court had reviewed “all competent
summary judgment evidence” warranted implied ruling sustaining movant’s
objections). 
          This Court has declined to adopt the minority view of the Fort Worth Court in
favor of the majority view that a reviewing court may not infer, from an order
granting a motion for summary judgment, that the trial court overruled the
nonmovant’s objections to the movant’s summary judgment evidence. See Delfino
v. Perry Homes, No. 01-05-00905-CV, 2006 WL 2042527at *2–3 (Tex.
App.—Houston [1st Dist.] July 26, 2006, no pet., not yet reported) (quoting and
adopting rationale of Well Solutions, Inc. v. Stafford, 32 S.W.3d 313 (Tex. App.—San
Antonio 2000, no pet.)). 
          More to the point, the Hixons do not premise their complaint on the trial
court’s having overruled their objections but on the trial court’s failure to rule on
them. Yet, it is undisputed that the Hixons did not preserve error for that failure, as
provided for and as required by rule Tex. R. App. P. 33.1(a)(2)(B). We hold,
therefore, that the Hixons did not preserve their complaint that the trial court erred by
failing to rule on their objections to their opponents’ summary judgment evidence. 
          We overrule issue eight.


 
 
Traditional Summary Judgment on Limitations 
          The their first issue, the Hixons challenge the traditional summary judgment
on limitations grounds rendered in favor of Pedigo. In their third and fifth issues, the
Hixons contend that the trial court erred by rendering traditional summary judgment
in favor of K2 and Tyco on limitations grounds, to the extent that was the basis on
which the trial court ruled. 
          A two-year statute of limitations applies to all tort actions and all DTPA
claims. See Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon Supp. 2005);
Tex. Bus. & Com. Code Ann. § 17.50(a)(2) (Vernon 2005). A four-year statute of
limitations generally applies to non-DTPA contract and breach of warranty claims.



Tex. Bus. & Com. Code Ann. § 2.725(a)–(b) (Vernon 2005). The Residential
Construction Liability Act has no limitations provisions and expressly states that it
“does not create a cause of action or derivative liability or extend a limitations
period.” Tex. Prop. Code Ann. § 27.005 (Vernon 2000); see Sanders v. Constr.
Equity, Inc., 42 S.W.3d 364, 370 (Tex. App.—Beaumont 2001, pet. denied) (stating
that statute “limits and controls causes of action that otherwise exist”). As
defendants-moving for summary judgment on the affirmative defense of limitations,
Pedigo and K2 and Tyco had to establish the limitations bar conclusively and,
therefore, had to prove when the Hixons’ cause of action arose. 
          Courts determine as a matter of law when a cause of action accrues. Williams
v. Khalaf, 802 S.W.2d 651, 658 (Tex. 1990); see PPG Indus., Inc. v. JMB/Houston
Ctrs. Partners Ltd. P’ship, 146 S.W.3d 79, 94 (Tex. 2004) (holding that cause of
action premised on defective windows in office building accrued as a matter of law
when one quarter of windows failed). Accrual occurs when facts come into existence
that authorize a claimant to seek a judicial remedy. Robinson v. Weaver, 550 S.W.2d
18, 19 (Tex. 1977). A party need only be aware of enough facts that apprise of a right
to seek a judicial remedy. Murray v. San Jacinto Agency, Inc., 800 S.W.2d 826, 828
(Tex. 1990). 
          Under the discovery rule, triggered here by the Hixons’ pleadings, the statute
of limitations begins to run when the plaintiff discovers, or, through the exercise of
reasonable care and diligence should have discovered, the “facts of injury.” See
Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 351 (Tex. 1990) (emphasis in
original); see also Bayou Bend Towers Council of Co-Owners v. Manhattan Constr.
Co., 866 S.W.2d 740, 743 (Tex. App.–Houston [14th Dist.] 1993, writ denied) (citing
Sw. Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 492-93 (Tex. App.–Houston [1st Dist.]
1992, writ denied)) (stating that discovery rule imposes duty on plaintiff to exercise
reasonable diligence to discover facts of negligence or omission). When a plaintiff
knew or should have known of an injury generally presents a question of fact. Cadle
Co. v. Wilson, 136 S.W.3d 345, 352 (Tex. App.—Austin 2004, no pet.). But, when
reasonable minds cannot differ about the facts in the summary judgment record,
courts determine onset of limitations in regard to the discovery rule as a matter of law,
as the supreme court ruled in PPG Industries. See id., 146 S.W.3d 94; Wheeler v.
Methodist Hosp., 95 S.W.3d 628, 639–40 (Tex. App.—Houston [1st Dist.] 2002, no
pet.). 
          The discovery rule arises when the injured party claims that it did not and could
not know of the injury when it occurred because the injury was “inherently
undiscoverable,” as the Hixons alleged here in the last-filed pleading. See Bayou
Bend Towers Council of Co-Owners, 866 S.W.2d at 743. The discovery-rule
elements, inherent undiscoverability and objective verifiability, balance the
conflicting benefits of precluding stale claims and the risk of precluding meritorious
claims that fall beyond an arbitrarily set period. See S.V. v. R.V., 933 S.W.2d 1, 6
(Tex. 1996); Cadle Co., 136 S.W.3d at 350–51 (citing same for this proposition). 
          Because the Hixons raised the discovery rule, Pedigo and K2 and Tyco had the
burden to demonstrate that there was no genuine issue of material fact about when the
Hixons discovered, or, in the exercise of reasonable diligence, could have discovered
the nature of their injury and cause of action. See KPMG Peat Marwick v. Harrison
County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999); Moreno, 787 S.W.2d at
351. In a traditional summary judgment, the burden never shifts to the nonmovant
unless and until the movant has “establish[ed] his entitlement to a summary judgment
on the issues expressly presented to the trial court by conclusively proving all
essential elements of his cause of action or defense as a matter of law.” Casso v.
Brand, 776 S.W.2d 551, 556 (Tex. 1989) (quoting City of Houston v. Clear Creek
Basin Auth., 589 S.W.2d 671, 678, n.5. (Tex. 1979)). Once the movant proves a right
to summary judgment, the burden shifts to the nonmovant to present evidence
creating genuine issues of material fact. Phon Son Van v. Pena, 990 S.W.2d 751, 753
(Tex. 1999).
          In the discovery-rule context, the Supreme Court of Texas instructs that
limitations can run against a claimant, despite lack of knowledge of the specific cause
of the injury, the party responsible for it, the full extent of it, or the chances of
avoiding it. PPG Indus., Inc., 146 S.W.3d at 93-94 & nn. 72–76 (citations omitted).
Thus, the discovery rule “does not linger until a claimant learns of actual causes and
possible cures”; “it tolls limitations only until a claimant learns of a wrongful injury.” 
Id. at 93. Knowledge of facts that would cause a reasonably prudent person to make
an inquiry that leads to discovery of the cause of action is legally “equivalent to
knowledge of the cause of action” for limitation purposes. See Bayou Bend Towers
Council, 866 S.W.2d at 747. For breach of warranty claims, the discovery-rule
exception does not apply unless one or both parties expressly warrants future
performance. Tex. Bus. & Com. Code Ann. § 2.725(b) (Vernon 2005); U.S. Marine
Corp. v. Kline, 882 S.W.2d 597, 600 (Tex. App.—Houston [1st Dist.] 1994, writ
denied). Under well-settled precedent, a claimant may not rely on repairs performed
by a seller to extend limitations for breach of warranty claims. PPG Indus., Inc., 146
S.W.3d at 95. 
          Pedigo moved for traditional summary judgment on the grounds that limitations
barred the Hixons’ claims because limitations began to run on all of the Hixons’
claims “at least before the end of 1995,” because the Hixons noticed leaks in 1995,
even before they occupied the residence. Pedigo relied on excerpts from deposition
testimony of Eric Hixon, in which he acknowledged observing leaks inside the house
before taking occupancy, confirmed that he sent a written notice on June 28, 1995
concerning standing water on the parapet flashing of the roof, and also confirmed
Pedigo’s records showing his complaints to Pedigo in mid-1997, late 1997, early
1998, mid-1998, again in late 1998, and “many more than that.” In the same
deposition testimony, Hixon acknowledges consulting Ausmus and K2 and Tyco,
referred to “wood problems” that occurred in mid-1997 and described the conditions
that began in mid-1997 as follows: “almost every time it rained, it would rain in the
house.” In addition, Hixon stated that discolorations had appeared all over the
surface of the stucco exterior by 1998 and described the surface of the stucco as
“soft” and that he “could mash it in.” K2 and Tyco moved for traditional summary
judgment on limitations on the same grounds, contentions, and summary-judgment
evidence and also provided additional summary judgment evidence. 
          Relying on the discovery-rule exception to the limitations bar, asserted in their
third amended petition, the Hixons opposed Pedigo’s motion by asserting that they
had timely sued Pedigo on December 7, 2001 and timely sued K2 and Tyco on June
28, 2002, because the damage to the house was inherently undiscoverable until
“February or March 2000.” The Hixons present variations of that contention on
appeal. They rely on the portion of Eric Hixon’s amended affidavit in which he
describes a water leak in the master bedroom window, allegedly caused by a lack of
caulking for the window directly above that window. In the amended affidavit, Eric
Hixon states that Ausmus, the general contractor, repaired that leak and that “we had
no further problems with water leaks until 1997.” 
          As to K2 and Tyco, the Hixons rely on an express, seven-year “Finestone”
warranty, claiming that they timely sued K2 and Tyco on June 28, 2002. They further
contend, alternatively, that they had no cause of action against K2 and Tyco until
August 10, 2000, when, according to another amended affidavit by Eric Hixon, an
attorney notified the Hixons in writing that Finestone refused to contribute to repairs
to the home. The Hixons state that they “first actually learned the magnitude of their
problems when they received the report from French Engineering on July 27, 2001. 
In response briefs, the Hixons contend that they had no causes of action, and,
therefore, no causes of action to accrue, until they had outright denials from Pedigo
and K2 and Tyco. 
PPG Industries, Inc.—Discovery Rule
          In PPG Industries, the supreme court ruled that the application of the discovery
rule ended as a matter of law, and the plaintiff should have known that it had a claim,
when one quarter of the specialized, two-panel “Twindows” at One Houston Center
office building failed and needed to be replaced. 146 S.W.3d at 94. The court
clarified that “a few isolated defects” do not establish discovery of a cause of action
as a matter of law, and that the discovery rule does not end “when the first leak is
discovered,” nor “continue until all the leaks are known.” Id. Rather, in the context
of leaks from windows, roofs, and sewers, the application of the discovery rule ends
when an owner “knows of enough leaks to indicate [that] the problem is not isolated.” 
Id. & n.78 (citing with approval, Cornerstones Mun. Util. Dist. v. Monsanto Co., 889
S.W.2d 570, 576–77 (Tex. App.—Houston [14th Dist.] 1994, writ denied); Bayou
Bend Towers Council of Co-Owners, 866 S.W.2d at 742–43; Tenowich v. Sterling
Plumbing Co., 712 S.W.2d 188, 189–90 (Tex. App.—Houston [14th Dist.] 1986, no
writ). 
          Applying the PPG reasoning here, we disagree with Pedigo’s and K2’s and
Tyco’s contention that the application of the discovery rule ended in 1995, based on
Eric Hixon’s awareness of standing water on the roof and other leaks before the
Hixons occupied the house in 1995 and his observing other leaks that year. The
summary judgment evidence that supports end of the application of the discovery rule
in 1995—and consequential awareness of a cause of action in 1995—does not rise
above mere isolated incidents and, therefore, does not establish, as a matter of law,
that the Hixons knew in 1995 that they had causes of action and risked a limitations
bar unless they sued on a timely basis. See PPG, 146 S.W.3d at 94. Accrual of a
cause of action, however, remains a question of law. Williams, 802 S.W.2d at 658;
see PPG Indus., Inc., 146 S.W.3d at 94. Although, in moving for summary judgment,
Pedigo and K2 and Tyco argued generally that limitations barred the Hixons’ claims,
focusing on a specific year, 1995, the essential ground proposed for traditional
summary judgment remained the limitations bar. Therefore, our conclusion that the
application of the discovery rule did not end for the Hixons in 1995 does not mean
that the summary judgment evidence does not conclusively establish a different
accrual date, still outside the applicable limitations period. 
          The summary judgment evidence compels the following conclusions: (1) the
Hixons knew, that is, discovered, in mid-1997, that there were significant water-leakage problems with the house; and (2) the knowledge they acquired was sufficient,
as a matter of law, to end the application of the discovery rule and to constitute
knowledge of potential claims. Though Eric Hixon attested to a lack of problems
between 1995 and 1997, after the initial leak that Ausmus repaired, he repeatedly
stated that the onset of new leakage problems occurred in “mid-1997.” In 1997,
Hixon confirmed continuing leakage problems in the house, and in different areas
than had leaked before, as well as “wood problems” that also began in mid-1997. In
addition, he confirmed “numerous” discussions concerning water leakage with a
Pedigo representative in mid-1997 and late 1997, stated that there were “many more”
than reflected in Pedigo’s records, and generally described the conditions as “rain in
the house.” As Eric Hixon’s amended affidavits further reflect, he conferred with K2
and Tyco representatives about the same problems in the same time period. 
          This sworn testimony by Eric Hixon, when considered with the 1995 incidents,
particularly the standing water on the roof, cannot be reconciled with the Hixons’
assertion, in pleadings filed after Pedigo moved for summary judgment, that the
damage remained “inherently undiscoverable,” despite due diligence, and was “not
objectively verifiable until February or March 2000.” Indeed, the Hixons’ live
pleadings acknowledge that the house sustained “severe wood deterioration in the
plywood sheathing and wood studs” in 1998 that is attributed to the 1997 water
leakage problems. See Houston First Am. Sav. v. Musick, 650 S.W.2d 764, 767 (Tex.
1983) (stating that assertions of fact, not pled in the alternative, constitute judicial
admissions); see also Manahan v. Meyer, 862 S.W.2d 130, 133 (Tex. App.—Houston
[1st Dist.] 1993, writ denied) (summary-judgment context holding that pleadings
constituted judicial admissions of requisite facts for applicability of ERISA). 
          The “numerous” problems that Eric Hixon identified, beginning in mid-1997,
correspond to the failure of a fourth of the specialized windows that ended the
application of the discovery rule as a matter of law for the claimants in PPG
Industries. See 146 S.W.3d at 94. The problems identified as beginning in mid-1997
correspond as well to the first damage to the condominium complex that ended the
application of the discovery rule in Bayou Bend Towers Council. See 866 S.W.2d at
743. Eric Hixon’s deposition testimony describing the water-leakage conditions as
“rain in the house” likewise corresponds to the “leaked like a sieve” deposition
description of the condominium building that assisted our sister court’s disposition
in Bayou Bend Towers Council. See id. “Serious problems” and complaints about
those problems generally end the application of the discovery rule because complaints
compel the conclusion that the complaining party is aware of a defect. See id. This
reasoning, by the supreme court in PPG Industries and our sister court in Bayou
Bend, comports precisely with the settled duty imposed on the Hixons, as pleaders of
the discovery rule, to exercise reasonable diligence to discover facts of negligence or
omission. See Sw. Bell Media, Inc., 825 S.W.2d at 492–43; see also Bayou Bend
Towers Council, 866 S.W.2d at 747 (stating that knowledge of facts that would cause
reasonably prudent person to make inquiry resulting in discovery of cause of action
is legally “equivalent to knowledge of the cause of action” for limitation purposes). 
          Though the Hixons contend that repairs performed on the house in 1998 and
1999 extended the application of the discovery rule for them, those repairs do not
negate what the Hixons knew in mid-1997. Moreover, well-settled Texas precedent,
including this Court’s opinion in Richker v. United Gas Corp., 436 S.W.2d 215 (Tex.
Civ. App.—Houston [1st Dist.] 1968, writ ref’d n.r.e.), holds that repairs performed
by a defendant do not toll the discovery rule for plaintiffs and, thus, do not extend
limitations. See id. at 218–19; PPG Indus., Inc., 46 S.W.3d at 94 & nn.81–82 (citing
Smith v. Fairbanks Morse & Co., 102 S.W. 908, 908–09 (Tex. 1907) and Richker,
436 S.W.2d at 218–19, among other cases). 
          The Hixons are also mistaken in contending that they had no cause of action
against Pedigo or K2 and Tyco until these entities “refused outright” to continue
repairs, as K2 and Tyco did on August 10, 2000 and as Pedigo did in 2000. The
Hixons cite no authority that authorizes delay of discovery of a liability cause of
action against a defendant until refusal to continue repair occurs, and we know of
none.


 Eric Hixon’s belief that the two leaks that developed in 2000 were unrelated
to the 1998 and 1999 leaks and repairs to the east wall of the house and the Hixon’s
contention that they only learned the magnitude of the problems through the French
Engineering report, have no bearing on what the Hixons knew in mid-1997 for
purposes of the discovery rule. See PPG Indus, Inc., 146 S.W.3d at 93–94 & nn.
72–76 (“The discovery rule does not linger until a claimant learns of actual causes
and possible cures[,]” and does not continue until all the leaks are known.”). 
Fraudulent Concealment
          The Hixons contend that they were assured, after Pedigo and K2 and Tyco
made repairs to the house in 1998 and 1999, that there were no remaining problems
with the house. The summary judgment record reveals only that contention, and only
from their pleadings, which allege fraudulent concealment against Pedigo and allege
fraud and misrepresentation by K2 and Tyco. In the amended affidavit filed as to K2
and Tyco, Eric Hixon states that “an architect with Finestone” inspected the house
before the 1999 repairs.


 Using a water-detection meter of a type that Hixon had not
previously seen used, the architect found only the damage on the east side that was
later repaired. Hixon then states that the architect “did not inform us that we had any
other problems” with the house, but that he should be contacted if so, “and his office
would correct the problems.” Hixon concludes by stating that he relied on that
representation. Although Hixon avers that he relied on the architect’s failure to
identify additional problems as a representation that there would be none, a failure
to find water-leakage problems does not equate, as a matter of law, to an assurance
that there are no other water-leakage problems. As in PPG Industries, here there is
no competent summary judgment evidence that a representative of Pedigo, or K2 and
Tyco “ever said [the problems were fixed].” See 146 S.W.3d at 97 (emphasis in
original). Even if Hixon reasonably relied on what the architect said, his belief and
subjective thoughts are no evidence of false assurances, “[e]ven if false assurances
can toll limitations.” Id. at 96. 
          The summary judgment record and the Hixons’ arguments emphasize the
alleged “assurances” of “no problems” to support their fraudulent concealment “cause
of action.” Assertions of fraudulent concealment, coupled with assertions of
misrepresentation, as here, do not give rise to an independent cause of action. Nelson
v. Regions Mortgage, Inc., 170 S.W.3d 858, 862 (Tex. App.—Dallas 2006, no pet.)
(citing Formosa Plastics Corp., 960 S.W.2d at 47). Rather fraudulent concealment,
like the discovery rule, is an equitable doctrine that, if proven, “estops a defendant
from relying on limitations as an affirmative defense.” Cadle Co.; 136 S.W.3d at 354. 
To defeat an asserted limitations bar in regard to fraudulent concealment, the Hixons
had to raise a fact issue on each of the following elements: (1) the existence of the
underlying tort; (2) the defendants’ knowledge of the tort; (3) the defendants’ use of
deception to conceal the tort; and (4) the Hixons’ reasonable reliance on the
deception. See Bayou Bend, 866 S.W.2d at 746. A plaintiff must show that the
defendant actively suppressed the truth, Vial v. Gas Solutions, 187 S.W.3d 220, 229
(Tex. App.—Texarkana 2006, no pet.), and the defendant must have a duty to
disclose the truth. Cadle Co., 136 S.W.3d at 354. 
          In his amended affidavit, filed in response to K2’s and Tyco’s motion for
summary judgment, Eric Hixon states that he relied on the “Finestone” architect who
inspected the house. Hixon does not allege or demonstrate that the reliance was
reasonable. And though he further concludes that the architect knew about other
defects than those disclosed on the east side of the house, and accuses the architect
of “intentionally, knowingly, and falsely” stating that he found no other problems,
nothing in these accusations is competent summary judgment evidence that any
defendant in fact had knowledge that a wrong occurred and the requisite fixed
purpose to conceal it and thus suppress the truth. See Mellon Serv. Co. v. Touche
Ross & Co., 17 S.W.3d 432, 436 (Tex. App.—Houston [1st Dist.] 2000, no pet.); Vial,
187 S.W.3d at 229. Similarly, the Hixons neither allege nor demonstrate, through
competent summary judgment evidence, that Pedigo and K2 and Tyco had a duty of
disclosure under the circumstances presented here. See Cadle Co., 136 S.W.3d at
354. We therefore conclude, as a matter of law, that Pedigo and K2 and Tyco had no
duty of disclosure. See id.
 
          Having reviewed the summary judgment rendered in favor of Pedigo on
traditional, rule 166a(c) grounds and the summary judgment rendered in favor of K2
and Tyco as having been rendered on rule 166a(c) grounds, and having reviewed the
summary judgment evidence in accordance with the appropriate standard of review,
we hold that Pedigo and K2 and Tyco met their burden, through summary judgment
evidence that established, as a matter of law, that there is no genuine issue of material
fact concerning when the Hixons discovered, or in exercise of reasonable diligence
should have discovered that the causes of action accrued, as a matter of law, in mid-1997. Because we conclude that the trial court properly rendered judgment in favor
of Pedigo and K2 and Tyco on traditional, rule 166a(c) grounds, we need not address
whether the trial court properly rendered summary judgment in favor of K2 and Tyco
on no-evidence grounds. FM Props Operating Co., 22 S.W.3d at 872–73.
          Because the application of the discovery rule ended for the Hixons in mid-1997, thus triggering all applicable statutes of limitations, the two-year statute of
limitations expired in mid-1999 and the four-year statute of limitations expired in
mid-2001. We address the implications of these deadlines in our analysis of the
issues that follow and the conclusion.
          We overrule the Hixons’ first issue, as to Pedigo, in part and overrule the
Hixons’ third and fifth issues in part, as to K2 and Tyco.


 
Claims not Addressed by Summary Judgment
          In their second issue, the Hixons contend that the trial court erred by
dismissing their claims against Pedigo with prejudice on grounds not addressed by
summary judgment. The Hixons’ fourth issue presents the same issue as to K2 and
Tyco. Specifically, the Hixons contend that the summary judgment grants more relief
than requested by the movant and must be reversed. Lehman v. Har-Con Corp., 39
S.W.3d 191, 200 (Tex. 2001); Chessher v. Southwestern Bell Tel. Co., 658 S.W.2d
563, 564 (Tex. 1983); Postive Feed, Inc. v. Guthmann, 4 S.W.3d 879, 881 (Tex.
App.–Houston [1st Dist.] 1999, no pet.); see also McConnell, 858 S.W.2d at 341 (“A
motion for summary judgment must stand or fall on the grounds expressly presented
in the motion.”). Tex. R. Civ. P. 166a(c) (“Issues not presented to the trial court by
written motion, answer, or other response shall not be considered as grounds for
reversal.”). A defendant who does not amend or supplement its motion for summary
judgment to address claims asserted in a plaintiff’s amended pleading is generally not
entitled to a summary judgment on the plaintiff’s entire case. See Blancett v.
Lagniappe Ventures, Inc., 177 S.W.3d 584, 592 (Tex. App.—Houston [1st Dist]
2005, no pet.); Smith v. Atlantic Richfield Co., 927 S.W.2d 85, 88 (Tex.
App.–Houston [1st Dist.] 1996, writ denied). The portion of a final summary
judgment rendered on the plaintiff’s entire case under these circumstances must
generally be reversed because the judgment grants more relief than requested. 
Lehmann, 39 S.W.3d at 200; Blancett, 177 S.W.3d at 592; Postive Feed, Inc., 4
S.W.3d at 881. 
          An amended or supplemental motion for summary judgment might not be
necessary, however, when the amended petition essentially reiterates previously
pleaded causes of action. See Fraud-Tech, Inc. v. Choicepoint, Inc., 102 S.W.3d 366,
387 (Tex. App.–Fort Worth 2003, pet. denied). Summary judgment may also be
proper when a ground asserted in a motion for summary judgment conclusively
negates a common element of the newly and previously pleaded claims, see Blancett,
177 S.W.3d at 592, or when the original motion is broad enough to encompass the
newly asserted claims. Farah v. Mafrige & Kormanik, 927 S.W.2d 663, 671–72 (Tex.
App.—Houston [1st Dist.] 1996, no writ); Judwin Props, Inc. v. Griggs & Harrison,
911 S.W.2d 498, 502 (Tex. App.—Houston [1st Dist.] 1995, no writ). 
Claims against Pedigo
          As to Pedigo, the Hixons contend that the trial court erred by dismissing the 
fraudulent concealment, breach of common law express and implied warranties, and
negligent performance of undertaking claims because the Hixons added these claims
in their third amended petition and Pedigo did not amend its motion for summary
judgment to address those claims. 
 
          1.       Fraudulent Concealment
          As stated in our disposition of the Hixons’ first issue, the Hixon’s failed to
raise a fact issue in regard to fraudulent concealment, which, if proved would negate
Pedigo’s affirmative defense of limitations. .
          2.       DTPA Warranty Claims
          The Hixons’ third amended original petition abandoned their earlier pleadings
asserting breach of express and implied warranty claims against Pedigo and restated
them as DTPA express and implied warranty claims. The DTPA does not define or
create new warranties. See Parkway Co. v. Woodruff, 901 S.W.2d 434, 438 (Tex.
19950; U.S. Tire-Tech, Inc. v. Boeran, B.V., 110 S.W.3d 194, 197 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied). The Hixons’ amended, live pleadings
also state that Pedigo issued two express warranties relating to the work done on the
roof of the house, on June 28, 1995, and July 29, 1999. By restating their claims as
DTPA claims, the Hixons triggered the statute’s two-year or four-year limitations. 
See Tex. Bus. & Comm. Code Ann. § 17.50(a)(2), § 2.725(b) (Vernon 2005); PPG
Indus., Inc., 146 S.W.3d 79, 92–93 & n.67 (citing section 2.725(b) and its tolling
provisions). Pedigo’s motion for traditional summary judgment did not address these
claims, and their discovery-rule arguments do not encompass these alleged onset
dates. Depending upon whether warranties were made in 1995 or 1999, the Hixon’s
warranty claims may be time-barred. However, by filing to address these newly-asserted claims, Pedigo has failed to establish, as a matter of law, when the Hixons’
warranty claims accrued. Accordingly, we must reverse the portion of the trial court’s
judgment that dismisses the Hixons’ DTPA warranty claims against Pedigo. Lehman,
39 S.W.3d at 200; McConnell, 858 S.W.2d at 341; Tex. R. Civ. P. 166a(c). 
          3.       Negligent Undertaking
          We reach a similar conclusion concerning the Hixons’ newly asserted claims
of negligent undertaking. To establish a negligent undertaking cause of action, a
plaintiff must show (1) the defendant undertook to perform services that it knew or
should have known were necessary for the plaintiff’s protection, but (2) the defendant
failed to exercise reasonable care in performing those services, and that either (3) the
plaintiff relied on the defendant’s performance, or (4) the defendant’s performance
increased the plaintiff's risk of harm. See Torrington Co. v. Stutzman, 46 S.W.3d 829,
838-39 (Tex. 2000); Tex. Woman’s Univ. v. Methodist Hosp., No. 01-05-01078-CV,
2006 WL 2380981 at *14 (Tex. App.—Houston [1st Dist.] Aug. 17, 2006, no pet.). 
The cause of action differs from simple negligence in that the duty allegedly breached
derives from the services undertaken. See Torrington, 46 S.W.3d at 838–39. 
          Pedigo did not address the Hixons’ negligent undertaking claims in moving for
traditional motion for summary judgment, and Pedigo’s discovery-rule contentions
in the motion do not encompass an onset date for these newly asserted claims. 
Depending on whether the Hixons’ claims accrued in 1995 when the house was built,
in 1998 when Pedigo inspected the house, or in 1999 when the EIFS was reinstalled,
the Hixons’ negligent undertaking claims may be time-barred. Again, by failing to
respond to these newly-asserted claims, Pedigo has failed to establish, as a matter of
law, when the Hixons’ negligent undertaking cause of action accrued. We must,
therefore, reverse the portion of the trial court’s judgment that dismisses the Hixons’
negligent undertaking claims against Pedigo. Lehman, 39 S.W.3d at 200; McConnell,
858 S.W.2d at 341; Tex. R. Civ. P. 166a(c). 
          We sustain the Hixons’ second issue in part as to their DTPA warranty and
negligent undertaking claims against Pedigo. 
Claims against K2 and Tyco
          Like Pedigo, K2 and Tyco moved for traditional summary judgment on the
ground that limitations barred the barred the Hixons’ claims. K2 and Tyco also relied
on the discovery rule and asserted applicable limitations bars. But, K2 and Tyco
addressed only the Hixons’ claims for simple negligence, strict liability, both of
which the Hixons abandoned in their live pleadings, and violations of the DTPA. 
K2’s and Tyco’s motion did not address the following additional claims alleged
against them in the Hixons’ live pleadings: products liability, premised on an
allegedly defective product; strict tort liability; negligent product design; negligent
product distribution; breach of implied and express warranties; common-law
misrepresentation; and fraud and misrepresentation violations of the DTPA. 
          Because the latter two claims are governed by the DTPA’s two-year statute of
limitations, the DTPA bar asserted in K2 and Tyco’s motion for traditional summary
judgment was broad enough to also encompassed the Hixons’ newly-asserted claims
for fraud and misrepresentation violations of the DTPA. See Blancett, 177 S.W.3d
at 592; Farah, 927 S.W.2d at 671–72. The same reasoning does not apply, however,
to their claims for products liability, strict tort liability, negligent product design,
negligent product distribution, breach of implied and express warranties, and
misrepresentation. K2 and Tyco did not address these claims, or any discovery-rule
implications of these claims, in moving for traditional motion for summary judgment,
and their discovery-rule and limitations bar contentions do not encompass an onset
date for these newly asserted claims. Again, the Hixons’ live pleading contemplates
several possible accrual dates for these causes of action. Specifically, the EIFS
product was initially installed in 1995, the house was inspected in 1998, and the EIFS
was reinstalled in 1999. K2 and Tyco, by not responding to the newly-asserted
claims, failed to establish, as a matter of law, the accrual date of these causes of
action. We must, therefore, reverse the portion of the trial court’s judgment that
dismisses these claims against K2 and Tyco. Lehman, 39 S.W.3d at 200; McConnell,
858 S.W.2d at 341; Tex. R. Civ. P. 166a(c). 
          We sustain the Hixon’s fourth issue in part as to their claims for products
liability, strict tort liability, negligent product design; negligent product distribution,
breach of implied and express warranties, and misrepresentation. 
Denial of Motion New Trial—Pedigo
          The Hixons’ seventh issue challenges the trial court’s ruling denying their
motion for new trial as to Pedigo because the trial court (1) did not assume “all
factual evidence” in their favor, and (2) refused to reinstate their fraudulent
concealment, DTPA breach of warranty, and negligent undertaking claims against
Pedigo, because (3) Pedigo did not “request summary judgment relief” on those
claims. Having addressed these contentions in our disposition of the preceding
issues, we need not the Hixons’ seventh issue. 
Conclusion
          We reverse the portion of the trial court’s final judgment that dismisses with
prejudice the Hixons’ DTPA warranty and negligent undertaking claims against
Pedigo and that dismisses with prejudice the Hixons’ claims against K2 and Tyco for
products liability, strict tort liability, negligent product design; negligent product
distribution, breach of implied and express warranties, and misrepresentation. We
affirm the judgment of the trial court in all other respects. 
 

 
Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Alcala.